O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Z PRODUX, INC., | ) | Case No. CV 13-00734 DDP (RZx) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANT'S MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| v. | ) | |
| | ) | [DKT No. 35] |
| MAKE-UP ART COSMETICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Before the court is Make-Up Art Cosmetic, Inc.'s ("MAC") Motion for Summary Judgment. The motion is fully briefed.[1] Having considered the parties' submissions and heard oral argument, the court now adopts the follow order.

**I.  Background**

Z Produx, Inc. ("Z Produx") and MAC are competitors in the arena of cosmetics accessories. This case centers on MAC's alleged infringement of a design patent held by Z Produx for a makeup palette.

---

[1] The court allowed Z Produx, Inc. to file a surreply.

Zena Shteysel, the president of Z Produx, is the named inventor of U.S. Patent No. 642,743 ("the '743 patent"), a design patent for a cosmetics holder. (See Declaration of Thomas Mahlum in Support of Motion, Ex. A.) Shteysel applied for the design patent on April 14, 2010 and it was issued August 2, 2011. (Id.) Shteysel subsequently assigned the patent to Z Produx on May 17, 2012. (Id., Ex. B.) The patent includes a single claim for "[t]he ornamental design for the cosmetic holder, as shown and described." (Id., Ex. A at 6.) The patent includes 14 figures depicting, from various perspectives, a cosmetic holder with a clear top and an empty base. (Id. at 6-12) As discussed further below, the design depicted has a "book-like" appearance, with a flat spine and sides that extend slightly beyond the middle part of the device. (Id.) It has a relatively wide rim framing the window to the compartment. (Id.)

Z Produx markets the "Z Palette," a cosmetics palette that resembles the '743 design patent and includes the text "Pat. D642,743" on the bottom of the device. (See Id., Ex. 10, 73; Ex. Z.) The products sold by Z Produx consist only of the Z Palette and two types of related accessories (metal pans and metal stickers). (Id., Ex. C (Deposition of Zena Shteysel at 8:17-10:23).)

On April 14, 2010, the same day on which Shteysel applied for the design patent, Shteysel also applied for a utility patent for a cosmetics holder. (Id., Ex. K. at 180, Patent Application No. 12-760029.) The application claimed, among other things, a cosmetics holder including a metal base made of magnetized metal, a recess for receiving metal makeup containers, and a top frame "defin[ing] a window for viewing the makeup containers that are supported on the magnetic base, when the cover assembly is closed." (Id. at

2

188.) Each of the application's five claims were rejected by the U.S. Patent and Trademark Office as anticipated by existing patents. (Id. at 222-226.) The claim asserting a framed window for viewing makeup containers while the cover assembly is closed was rejected as obvious in view of the Liden patent, U.S. Patent No. D597256, which has been assigned to Defendant MAC. (Id. at 224; MSJ at 8.)

MAC markets, among other products, a cosmetic palette called the MAC Pro Palette Large/Single ("MAC Palette"). (Complaint, DKT. No. 1 ¶ 11.) Like the Z Palette, the MAC Palette consists of an empty base container with clear window top. (See Mahlum Decl. Ex. AA.) However, as discussed below, unlike the Z Palette, the MAC Palette has edges that are flush with one another, a triangle-shaped hinge, and a relatively narrow rim framing the window. (See Id., Exs. M, N, and AA.)

Z Produx alleges that MAC's sale of the MAC Palette infringes its '743 design patent in violation of 35 U.S.C. § 271(a).

**II.  Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir.1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence

is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

### III. Discussion and Analysis
### A. Validity of Patent

"A patent is presumed to be valid, and this presumption can only be overcome by clear and convincing evidence to the contrary." Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368, 1374 (Fed. Cir. 2001) (citations omitted). One basis on which a patent may be proved invalid is evidence that the invention was "in public use" more than one year prior to the date of filing an application. 35 U.S.C. 102(b)(2010). Prior public use may serve to invalidate a design patent. In re Mann, 861 F.2d 1581, 1581-82 (Fed. Cir. 1988).

MAC argues that the '743 patent is invalid because the Z Palette design was in public use more than a year before the '743 patent application was filed. (MSJ at 24.) MAC alleges that the '743 design was depicted in a photograph of the Z Palette that was included in a trademark application filed by Z Produx on February 12, 2009, more than a year before Shteysel filed an application for the '743 design patent on April 14, 2010. (Id.; Mahlum Decl., Ex A.) MAC alleges that the photograph was posted on the United States Patent and Trademark Office website on February 12, 2009 and was made available to the public upon request in print form. (MSJ at 24, citing Mahlum Decl., Ex G.) MAC asserts that these alleged facts demonstrate that the patent is invalid.

Having considered the evidence before it, the court finds that there is no basis for finding the '743 patent invalid. Even

5

assuming the photograph was publicly available on the date MAC asserts, a contention Z Produx disputes, (Z Produx's Surreply at 1-3), the disclosure was not sufficient to anticipate and thereby invalidate the '743 patent.

For a prior art disclosure to be anticipatory, it must be "'enabling' - i.e., it must be sufficient to permit a person having ordinary skill in the art to practice the invention." SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1342 (Fed. Cir. 2005). "Pictures and drawings may be sufficiently enabling to put the public in the possession of the article pictured. Therefore, such an enabling picture may be used to reject claims to the article. However, the picture must show all the claimed structural features and how they are put together.' U.S. Patent and Trademark Office, Manual of Patent Examining Procedure, § 2102.04 (citing Jockmus v. Leviton, 28 F.2d 812 (2d Cir. 1928)).

The Z Produx trademark application included one picture of the Z Palette photographed from above. (See Mahlum Decl., Ex G.) The device's sides, edges, and contours are not visible. (Id.) The photograph does not reveal numerous elements of the design which were later reflected in the figures included in the '743 design patent. Indeed, with the exception of the width of the palette's rims, none of the elements included in the construction of the '743 patent proposed by MAC are apparent in the photograph. (See Reply at 3, citing MSJ, Ex. A; Mahlum Decl., Ex. Y.) These elements include a "lip" extending past the edged of the cosmetic holder and the flat spine along the back of the case. (Id.) (MAC's proposed construction is discussed further in the following subsection.) Because the photograph does not contain sufficient detail to

constitute invalidating prior art for the '743 design patent, the court must reject MAC's contention that the patent is invalid.

**B.  Patent Infringement**

**i.  Claim Construction**

To determine whether a design patent is infringed, the court must first construe the claim to the design, where appropriate, and then compare it to the design of the accused device. OddzOn Products, Inc. v. Just Toys, Inc., 122 F.3d 1396, 1404-05 (Fed. Cir. 1997) (citing Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995)).

"A design patent protects only the novel, ornamental features of the patented design," not its functional elements. Id; see also Lee v. Dayton-Hudson Corp., 838 F.2d 1186, 1188-91 (Fed. Cir. 1988) ("[I]t is the non-functional, design aspects that are pertinent to determinations of infringements. ... A device that copies the utilitarian or functional features of a patented design is not an infringement. ... [While] infringement can be found for designs that are not identical to the patented design, such designs must be equivalent in their ornamental, not functional, aspects."); L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1123 (Fed.Cir.1993) ("The elements of the design may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent.") Where a design is found to include both functional and ornamental features, the court must "factor[] out" the functional aspects of the design for the purposes of claim construction. Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1293 (Fed. Cir. 2010).

7

Critical to the instant case is whether two aspects of the palette depicted in the '743 patent--the clear top and empty compartment--are ornamental and therefore protected or, instead, functional and therefore unprotected. (See MJS at 20-24; Opp. at 8-11.) As discussed further below, it is these elements that are the subject of Z Produx's infringement action. A design is deemed to be functional "when the appearance of the claimed design is dictated by the use or purpose of the article." L.A. Gear, 988 F.2d at 1117 (internal citation and question marks omitted).

MAC asserts that the clear top and empty base are analogous to design elements found functional in OddzOn. There, the Federal Circuit construed a design patent covering a foam football with a tail and fin structure. 122 F.3d at 1405. The court found that the tail and fin structure was functional rather than ornamental, and therefore unprotected, because those features served the purpose of enabling the football to be thrown further than a traditional foam football. Id. MAC argues that, like the tail and fin structure, the clear top and empty compartment depicted in the '743 patent are designed to serve specific purposes, namely allowing a user to see the contents of her palette without opening it and to customize the palette's contents. (MSJ at 23.) The court agrees that the analogy to OddzOn is apt.

Z Produx argues that the clear top and empty compartment are not dictated by design on the grounds that MAC "had plenty of options when it came to alternative designs." (Opp. at 9.) It argues that the palette merely "serves the purpose of holding cosmetics" and points to various other cosmetic palettes that also

8

hold cosmetics but do not include the same clear window and empty base features. (Id. at 9-10.)

Z Produx's argument is unavailing because it mistakenly assumes that it is the functionality of the device as a whole, rather than the functionality of the elements at issue, that matters for the construction of a design patent. Indeed, in the course of finding that the tail and fin structure on the foam football in OddzOn were functional, the Federal Circuit specifically rejected the approach Z Produx now asks the court to adopt:

> OddzOn argues that the shape of a football with an arrow-like tail is an ornamental feature because "it is not required for a tossing ball." While OddzOn correctly states that there are many ways of designing "tossing balls," it is undisputed that the ball in question is specifically designed to be thrown like a football, yet travel farther than a traditional foam football. It is the football shape combined with fins on a tail that give the design these functional qualities. The tail and fins on OddzOn's design add stability in the same manner as do the tail and fins found on darts or rockets. They are no less functional simply because "tossing balls" can be designed without them.

122 F.3d 1406. The court went on to explain that the functional characteristics limit the scope of the protected subject matter. Id. The reasoning in OddzOn is controlling for the instant case. Just as a tail and fins are not necessary to design a "tossing ball," a clear cover and empty base are not necessary to design a cosmetics pallette. Yet in both cases the additional elements bring

9

added functionality to the product, rendering them functional, rather than ornamental, features.

Indeed, Z Produx has itself emphasized the functionality of the features at issue. In explaining why consumers like the Z Palette, Shteysel pointed to the functionality of the clear cover and empty base, stating: "[Customers] like the window and that you can see through it. They like that you can customize it anyway you want so you can fit any size product, any brand, all in one palette, interchangeable." (Deposition of Zena Shteysel in Support of Opposition at 94.)[2] (See also Shteysel Dep. at 103, 105, 109, 110.)

Moreover, the clear cover and empty base appear to be essential for the functionality that these elements offer. As MAC points out, there appears to be no other way to enable a user to view the contents of her palette without opening it but to make the cover see-through or to enable the customization of the palette's contents without leaving the compartment empty. (Reply at 10.) These considerations support a finding that the clear top and empty base are "dictated by the use or purpose of the article," 988 F.2d at 1117, and are therefore functional rather than ornamental.

---

[2] The court gives little weight to subsequent assertions, made by Ms. Shteysel in a declaration without assertions of factual support, that the clear cover and empty compartment serve aesthetic functions of making the palette look "more visually appealing" and "uncluttered." (DKT No. 38, Ex. 12, at ¶¶ 9-10. "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." Fed. Trade Comm'n v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) (citing Fed. Trade Comm'n v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997)).

1    The finding that the clear window and empty base are
2 functional rather than ornamental is further supported by the fact
3 these features appear to be protected by existing utility patents.
4 As discussed above, at the time that Shteysel applied for what
5 became the '743 design patent, she filed an unsuccessful
6 application for a utility patent.  The application claimed a
7 cosmetic holder with, among other elements, a "frame in order to
8 define a window for viewing the makeup containers." (Mahlum Decl.,
9 Ex. K at 188.) The patent office rejected the window claim as
10 obvious in view of the Liden utility patent (Patent No. D597256),
11 which claimed a top frame with "a window for viewing the makeup
12 containers when the cover is in a closed position." (Id. at 224-
13 25.) As noted, the Liden utility patent, which looks very similar
14 to the '743 design patent, has been assigned to MAC. (MSJ at 8.)
15 The patent office likewise rejected the other four claims in
16 Shteysel's utility patent application, which described a cosmetic
17 holder with a magnetic base with a recess for receiving metal
18 makeup containers, in light of the Jimbo patent (Patent No.
19 5005697). (Id. at 222-24.) The existence of these prior utility
20 patents covering the elements at issue further indicate that the
21 clear top and empty base elements are functional.
22    In sum, the facts in evidence clearly demonstrate that the
23 clear cover and empty base are functional, not ornamental, and thus
24 are not protected under the '743 design patent and may not form the
25 basis for an infringement action. Having reached this conclusion,
26 the court must "factor out" the clear window and empty base
27 elements for the purposes of claim construction. See Richardson,
28 597 F.3d at 1293.

The court next must examine what remaining relevant design features are ornamental and construe the claimed design accordingly. MAC proposes the following construction of the '743 patent design for the purposes of its motion:

> The '743 claims the ornamental features of a cosmetic holder design that includes a "lip" extending past the edge of the cosmetic holder, with a flat or flushed spine or hinge along the back of the case, and with the overall proportions depicted in its drawings.

(Reply at 3, citing MSJ, Ex. A; Mahlum Decl., Ex Y.)

Z Produx urges the court to refrain from providing any description of the elements of the claimed design. Borrowing language from the '743 design patent (which contains no verbal description of the patented design), it asks the court to adopt the construction: "an ornamental design for a cosmetics palette as shown in Figure 1." (Opp. at 8.) In advancing this position, Z Produx relies on Federal Circuit authority cautioning trial courts to avoid excessive reliance on a detailed verbal description of a patent infringement. Id. (citing Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 679 (Fed. Cir. 2008)). However, neither Egyptian Goddess nor any other case of which this court is aware has articulated the position that courts must refrain from any verbal description of the elements whatsoever. Indeed, the Federal Circuit specifically rejected this position in Richardson, raising the question of "how a court could effectively construe design claims, where necessary, in a way other than by describing the features showing the drawings." 597 F.3d at 1293.

As discussed further below, the court takes the figures

included in the '743 design patent as its touchstones for its infringement analysis. With that in mind, however, the court finds it necessary to provide a brief verbal description of the relevant claimed ornamental elements of the '743 design. It further finds, based on its own careful review of the '743 patent, that MAC's proposed characterization of the design is fair and accurate. It therefore adopts that description for the purposes of its infringement analysis.

**ii. Infringement**

Having construed the scope and relevant meaning of the '743 claim, the court must now compare the claim to the accused design to determine whether there has been any infringement. See Elmer v. ICC Fabricating, 67 F.3d 1571, 1577 (Fed. Cir. 1995). A design patent is infringed if the patented design, or any colorable imitation thereof, is applied without authorization to any article of manufacture for the purposes of sale. 35 U.S.C. § 289; Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1116-17 (Fed. Cir. 1998). To determine if an infringement has occurred, the court applies the "ordinary observer test," whereby the court must determine "whether an ordinary observer, familiar with the prior art and designs, would be deceived into believing that the accused product is the same as the patented design." Crocs, 598 F.3d 1303. The focus of the analysis is the "overall impression of the claimed ornamental features" rather than "small differences in isolation." Id. at 1303-04.

In the present case, the court finds that there is no triable question as to whether the MAC Palette infringes the claimable

ornamental elements of the '743 design. Z Produx has pointed to only two elements of the '743 design which it alleges are infringed by the MAC Palette: (1) the clear cover and (2) the empty base. See, e.g. (Mahlum Decl., Ex. S at Interrog. Resp. No. 10 (describing the claimed ornamental features in MAC accused products as "contain[ing] a clear window and also featur[ing] an open empty base design, just like the Z Palette") and Nos. 3 and 4 (describing ornamental design elements of the '743 patent as "a clear window, empty base, and … rectangular and square designs"); Shteysel Decl. (testifying that that MAC Palette "looks like mine, and it has the same features, clear window, empty base"). However, as discussed in the preceding section, because these features are functional, they are not entitled to protection under the '743 design patent and must be factored out for the purposes of infringement analysis. Thus, Z Produx has failed to point to any claimable design aspects of '743 that are infringed by the MAC Palette.

Moreover, a comparison of the '743 design with the MAC Palette reveals that, once the clear cover and empty base elements are factored out, the designs bear little resemblance. MAC has pointed to several areas which the court agrees bear consideration.

First, the MAC Palette has an overall slimmer look than the '743 patent and its Z Palette embodiment, owing to the designs' differing proportions. MAC notes, and Z Produx does not contest, that the window pane in the '743 design makes up 67% of the square inches of the lid, with the opaque rim making up the remaining 33%. (Oct. 7, 2013 Mahlum Decl. ¶ 3.) Similarly, the window pane of the Z Palette makes up 61% of the square inches of the lid, with 39% made up by the opaque rim. (Mahlum Decl. ¶ 4.) By contrast, the

14

window pane of the MAC Palette makes up a substantially greater 84% of the lid, as compared to 16.2% made up by the rim. (Id. ¶ 5.) The differing proportions make the products clearly distinguishable upon first glance.

Second, the '743 patent claims a cosmetic holder with a lip that extends beyond the edge of the cosmetic holder, giving the design a book-like appearance. (See id., Ex. A, Figs. 1, 4, 7, 8, 11.) The lip is also present in the Z Palette. (See id., Ex. 9.) By contrast, the MAC Palette has edges that are flush.

Third, the '743 patent claims a design with two seams or ridges along each side, in addition to the one where the case separates, contributing further to the design's book-like appearance. (See id., Ex. A, Figs. 1, 4, 7, 8, 11.) The MAC Pallete, contrastingly, has no additional seams.

Fourth, the '743 design has a hinge that is flush with the cosmetic case, resembling the binder of a book. (See id., Ex. A, Figs. 4, 5.)  By contrast, the MAC Palette has a distinctive triangular raised hinge. (Mahlum Decl., Ex. M.)

Z Produx urges that the court not consider such features as the "individual corners, lips, seams, spine, and attributes" of the products. (Opp. at 12.) Z Produx argues that consideration of such elements is impermissible in light of the Federal Circuit's abandonment of the "point of novelty" test. (Opp. at 12.) Under this now discarded test, in order to find infringement, after comparing the items through the eyes of an ordinary observer whereby, the court was required to attribute the similarity to novelty that distinguishes the patented device from prior art. See Egyptian Goddess at 543 F.3d at 676-77. However, the court does not

consider such design elements under the "point of novelty" test, but instead refers to these elements solely in the course of explaining that--once unclaimable features are factored out--an ordinary observer could not confuse the two products.

Z Produx has submitted quotations from online discussion forums which it asserts show that consumers are confused by the similarity between the Z Palette and the MAC Palette. (See Opposition at 17-18; Declaration of Robert Katz in Support of Opposition, Exs. 7, 6, 7, 8, 9.) However, leaving aside the question of whether the evidence is admissible, the evidence does not create a triable issue because none of the materials presented tend to show that consumers perceived the MAC Palette as similar to the Z Pallette because of shared ornamental features that are protected by the '743 design patent, rather than because of the shared clear cover and empty base, which are not protected by the patent. See OdzzOn at 1406 ("Because the accused products are clearly similar to OddzOn's design in terms of their football shape and their tail and fins, it was incumbent on OddzOn to submit evidence establishing that the ornamental aspects of their football-with-tail-and-fin combination accounted for the similarity perceived by the survey participants.")

In sum, the evidence before the court does not create a triable question as to whether MAC infringed Z Produx's '743 design patent through its sale of the MAC Palette.

///
///
///
///

**IV. Conclusion**

    For the reasons set forth above, the court GRANTS Defendant Make-up Art Cosmetics, Inc.'s motion for summary judgment.

IT IS SO ORDERED.

Dated: November 5, 2013

DEAN D. PREGERSON
United States District Judge